UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARCUS ANTHONY LOPEZ,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>CAROLYN W. COLVIN,<br>Acting Commissioner of Social Security,<br><br>　　　　Defendant. | Case No.: 1:14-cv-00495 - JLT<br><br>ORDER REMANDING THE ACTION PURSUANT TO SENTENCE FOUR OF 42 U.S.C. § 405(g)<br><br>ORDER DIRECTING ENTRY OF JUDGMENT IN FAVOR OF PLAINTIFF MARCUS ANTHONY LOPEZ AND AGAINST DEFENDANT CAROLYN COLVIN, ACTING COMMISSIONER OF SOCIAL SECURITY |

Plaintiff Marcus Anthony Lopez asserts he is entitled to benefits under the Social Security Act, and seeks judicial review of the decision denying his application for benefits. Plaintiff asserts the administrative law judge failed to set forth legally sufficient reasons for rejecting the social limitations identified by an examining physician. The Court agrees and orders the matter **REMANDED** for further proceedings.

**PROCEDURAL HISTORY**

Plaintiff applied for supplemental security income on April 14, 2011, alleging his disability began on July 1, 1999. (Doc. 13-6 at 7) The Social Security Administration denied his claim initially and upon reconsideration. (Doc. 13-3 at 21) After requesting a hearing, Plaintiff testified before an administrative law judge on November 1, 2012. (*Id.* at 39) The ALJ found Plaintiff was not disabled under the Social Security Act and issued an order denying benefits on November 30, 2012. (*Id.* at 21-

32) Plaintiff requested review by the Appeals Council of Social Security, which denied the request on February 4, 2014.  (*Id.* at 2)  Therefore, the ALJ's determination became the decision of the Commissioner of Social Security ("Commissioner").

## STANDARD OF REVIEW

District courts have a limited scope of judicial review for disability claims after a decision by the Commissioner to deny benefits under the Social Security Act.  When reviewing findings of fact, such as whether a claimant was disabled, the Court must determine whether the Commissioner's decision is supported by substantial evidence or is based on legal error.  42 U.S.C. § 405(g).  The ALJ's determination that the claimant is not disabled must be upheld by the Court if the proper legal standards were applied and the findings are supported by substantial evidence.  *See Sanchez v. Sec'y of Health & Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

Substantial evidence is "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197 (1938)).  The record as a whole must be considered, because "[t]he court must consider both evidence that supports and evidence that detracts from the ALJ's conclusion."  *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).

## DISABILITY BENEFITS

To qualify for benefits under the Social Security Act, Plaintiff must establish he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than 12 months.  42 U.S.C. § 1382c(a)(3)(A).  An individual has a qualifying disability only if:

> his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).  The burden of proof is on a claimant to establish his disability.  *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).  Once a claimant establishes a prima facie case of disability, the burden shifts to the Commissioner to show the claimant is able to engage in substantial

gainful employment.  *Maounis v. Heckler*, 738 F.2d 1032, 1034 (9th Cir. 1984).

**DETERMINATION OF DISABILITY**

To achieve uniform decisions, the Commissioner established a sequential five-step process for evaluating a claimant's alleged disability.  20 C.F.R. §§ 416.920 (a)-(f).  The process requires the ALJ to determine whether Plaintiff (1) engaged in substantial gainful activity during the period of alleged disability, (2) had medically determinable severe impairments (3) that met or equaled one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1; and whether Plaintiff (4) had the residual functional capacity to perform to past relevant work or (5) the ability to perform other work existing in significant numbers at the state and national level.  *Id.*  The ALJ must consider objective medical evidence and opinion hearing testimony.  20 C.F.R. §§ 416.927, 416.929.

**A.   Relevant Medical Opinions**

Dr. Charles Debattista performed a psychiatric evaluation of the Plaintiff on August 6, 2011. (Doc. 13-9 at 9)  Dr. Debattista noted he had received "general medical records" but "no psychiatric records" for review.  (*Id.*)  Plaintiff told Dr. Debattista he had "been in and out of prison all of his adult life." (*Id.*) He reported he had "been depressed all of his life," and "complain[ed] of anhedonia, fatigue, low appetite, insomnia, and chronic feelings of worthlessness." (*Id.* at 9-10)  Plaintiff told Dr. Debattista that he was treated by prison psychiatrists but had not seen any mental health professionals since his release. (*Id.* at 10)  Dr. Debattista observed:  "He made good eye contact and good interpersonal contact with this interviewer.  He was generally cooperative.  He was able to volunteer information spontaneously.  There was no psychomotor agitation or retardation.  He appeared genuine and truthful.  There was no evidence of exaggeration or manipulation." (*Id.* at 11)  Dr. Debattista found Plaintiff was able to "recall three of three objects immediately and one of three objects after five minutes." (*Id.* at 12)  Dr. Debattista opined that Plaintiff exhibited "some interpersonal difficulties" and "mostly antisocial traits that . . . present[] a challenge in maintaining any kind of employment." (*Id.* at 13) Dr. Debattista opined:

> Based on the examination today,
>
> 1.  The claimant is able to understand, remember, and carry out simple one or two-step job instructions.
> 2.  The claimant would have trouble with detailed and complex instructions.
> 3.  The claimant's ability to relate and interact with coworkers and the public is

        markedly impaired.
4. The claimant's ability to maintain concentration and attention, persistence and pace is moderately impaired.
5. The claimant's ability to accept instructions from supervisors is moderately impaired.
6. The claimant's ability to maintain regular attendance in the work place and perform work activities on a consistent basis is markedly impaired.
7. The claimant's ability to perform work activities without special or additional supervision is moderately impaired.

(Doc. 13-9 at 13-14) Dr. Debattista found Plaintiff had a GAF score of 51-60[1], and opined that Plaintiff's prognosis was poor, though "[t]reatment might help his depressive symptoms." (*Id.* at 13)

      Dr. Satish Sharma also performed a consultative examination on August 6, 2011. (Doc. 13-9 at 15) Dr. Sharma noted Plaintiff had a history of hepatitis C, asthma, borderline diabetes, "depression and panic attacks." (*Id.* at 15-16) Dr. Sharma performed a neurological exam, and determined Plaintiff was "alert and oriented to time, place, and person." (*Id.* at 18) According to Dr. Sharma, Plaintiff's memory was "intact for three of three words immediately, and at five minutes." (*Id.*)

      On August 17, 2011, Dr. Winston Brown reviewed the record and completed a psychiatric review technique and mental residual functional capacity assessment. (Doc. 13-9 at 31-48) Dr. Brown opined Plaintiff had mild restrictions in his activities of daily living; moderate difficulties in maintaining social functioning; and moderate difficulties in maintaining concentration, persistence, or pace. (*Id.* at 41) According to Dr. Brown, Plaintiff was "significantly limited" with all areas of understanding memory, including the ability to understand and remember very short and simple instructions. (*Id.* at 47) In addition, Dr. Brown believed Plaintiff was significantly limited in many aspects of social interaction, including: with the ability to interact appropriately with the public, asking simple questions or request assistance, getting along with coworkers or peers without distracting them or exhibiting behavioral extremes, and maintaining socially appropriate behavior. (*Id.*) Dr. Brown concluded Plaintiff was "able to perform work where interpersonal contact is incidental to work performed, e.g. assembly work; complexity of tasks is learned and performed by rote, few variables,

---

[1] GAF scores range from 1-100, and in calculating a GAF score, the doctor considers "psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders*, 34 (4th ed.) A GAF score of 51-60 indicates "moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflict with peers or co-workers)." *Id.* at 34.

little judgment; supervision required is simple, direct and concrete (unskilled)." (*Id.*)

**B.      Administrative Hearing**

Plaintiff testified that he had a seventh grade education and took some plumbing classes while incarcerated. (Doc. 13-3 at 44-45) However, Plaintiff said it "didn't work out" because there was "a lot of bookwork" that he couldn't understand. (*Id.* at 45) Plaintiff said he tried welding and learned masonry, for which he earned a certificate. (*Id.* at 46-47) He reported he did not have a job while in prison, because he "was in and out of trouble a lot." (*Id.* at 47) Plaintiff explained he would hold a job such as mopping floors for "maybe a month" before he would get in trouble and be sent to AdSeg. (*Id.* at 47-48, 54-55)

He acknowledged he got "heavy into drugs" throughout the 1980s and 1990s when he was not in prison. (Doc. 13-3 at 52) Plaintiff reported he had been sober for "[a]lmost five years." (*Id.* at 53) However, Plaintiff attributed his hepatitis C and the increase in his symptoms to the drug use. (*Id.*)

Plaintiff reported he avoided problems since being released from prison by "stay[ing] away from everybody" and isolating himself in his room. (Doc. 13-3 at 55) Plaintiff said he first began struggling with depression when he was "about 13." (*Id.* at 62) In addition, Plaintiff reported he was nervous around people, and would "get real light-headed, real dizzy." (*Id.* at 56) He explained that sometimes he had to leave a store in the middle of shopping because he was nervous around people. (*Id.* at 56-57)

He believed his mental health issues precluded him from performing full-time work, even if he was "indoors, away from people." (Doc. 13-3 at 65) Plaintiff explained his depression would make it difficult for him to show up to work. (*Id.* at 66) In addition, Plaintiff said he did not think he could control his temper because he "got violent on [his] last job" and was fired. (*Id.* at 69-70) Further, Plaintiff reported he had difficulty concentrating, even to watch television. (*Id.* at 67, 72) He estimated he could "hold a conversation maybe 10 minutes." (*Id.* at 72)

**C.      The ALJ's Findings**

Pursuant to the five-step process, the ALJ determined Plaintiff did not engage in substantial gainful activity his application was filed. (Doc. 13-3 at 23) Second, the ALJ found Plaintiff "has the following medically severe combination of impairments: chronic obstructive pulmonary disease;

hepatitis C virus; borderline diabetes mellitus; depressive disorder not otherwise specified; posttraumatic stress disorder; anxiety disorder not otherwise specified; [and] opioid dependence in remission." (*Id.*)  At step three, the ALJ found Plaintiff did not have an impairment, or a combination of impairments, that met or medically equaled a Listed Impairment, including Listings 3.02, 12.04, and 12.06. (*Id.* at 23-24)  Next, the ALJ determined:

> [Plaintiff] has the residual functional capacity to perform a wide range of light work as defined in 20 CFR 416.967(b): he must avoid concentrated exposure, *i.e.*, intense, continuous, intractable, unremitting exposure, to pulmonary irritants and workplace hazards, such as unprotected heights and dangerous machinery.  He can no more than rarely, no more than 20 percent of the workday, understand, remember, and carry out complex or detailed job instructions.  He is limited to no more than occasional face-to-face interaction with coworkers and the general public, although the claimant can work in close proximity or along-side people without difficulty.  He can have no more than frequent face-to-face interaction with supervisors.  He cannot perform work as part of cooperative teams, but can work independently and on his own.

(Doc. 13-3 at 25)  With this residual functional capacity, the ALJ found Plaintiff able to perform "jobs that exist in significant numbers in the national economy." (*Id.* at 30)  Therefore, the ALJ concluded Plaintiff was not disabled as defined by the Social Security Act. (*Id.* at 31-32)

## DISCUSSION AND ANALYSIS

Appealing the Commissioner's decision to deny his application for benefits, Plaintiff argues the ALJ erred in evaluating the medical evidence and erred by not obtaining testimony from a vocational expert. (Doc. 21 at 11-12)  In addition, Plaintiff asserts the ALJ failed to properly evaluate the credibility of his subjective complaints. (*Id.* at 13-14)

**A.     Evaluation of the Medical Evidence**

In cases of this type, there are three categories of physicians at issue: (1) treating physicians; (2) examining physicians, who examine but do not treat the claimant; and (3) non-examining physicians, who neither examine nor treat the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Generally, the opinion of a treating physician is afforded the greatest weight in disability cases, but it is not binding on an ALJ in determining the existence of an impairment or on the ultimate issue of a disability. *Id.*; *see also* 20 C.F.R. § 404.1527(d)(2); *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). Also, an examining physician's opinion is given more weight than the opinion of a non-examining physician. 20 C.F.R. § 404.1527(d)(2).  Thus, the courts apply a hierarchy to the opinions

6

offered by physicians. A physician's opinion is not binding upon the ALJ and may be discounted whether another physician contradicts the opinion. *Magallanes*, 881 F.2d at 751.

Here, Dr. Debattista examined Plaintiff and opined that he exhibited "some interpersonal difficulties" and "mostly antisocial traits that . . . present[] a challenge in maintaining any kind of employment." (Doc. 13-9 at 13) Dr. Debattista determined Plaintiff was "markedly impaired" with his "ability to relate and interact with coworkers and the public," as well as his "ability to maintain regular attendance in the work place and perform work activities on a consistent basis." (*Id.* at 13-14) Similarly, Dr. Brown reviewed the record and determined Plaintiff was "significantly limited" with many aspects of social interaction, including: the ability to interact appropriately with the public, asking simple questions or request assistance, getting along with coworkers or peers without distracting them or exhibiting behavioral extremes, and maintaining socially appropriate behavior. (*Id.* at 47) As a result, Dr. Brown concluded Plaintiff was only "able to perform work where interpersonal contact is incidental to work performed, e.g. assembly work." (*Id.*)

The ALJ rejected the extent of Plaintiff's social limitations in part and concluded Plaintiff was able to engage in "occasional face-to-face interaction with coworkers and the general public . . . and work in close proximity or along-side people without difficulty." (Doc. 13-3 at 25) The ALJ gave "little weight" to the opinion of Dr. Debattista because he believed the opinion was "inconsistent with the medical evidence of record, including his own examination report." (*Id.* at 30) In addition, the ALJ opined Dr. Debattista's "opinion was not well supported by the evidence, and it appears to be based largely on the claimant's subjective statements concerning his abilities rather than Dr. Debattista's own observations of his functioning." (*Id.*) Similarly, the ALJ gave "little weight" to the opinion of Dr. Brown, explaining: "Dr. Debattista noted that he had good interpersonal skills, and his treating clinicians have not described problems interacting with him. This implies that his ability to deal with the public is not quite as limited as Dr. Brown found. Further, his feelings of anxiety around others also likely restrict his ability to interact with supervisors and coworkers, but Dr. Brown describes no limitations in these areas." (*Id.* at 29)

Where, as here, a physician has given an uncontroverted opinion, the ALJ may only reject the physician's opinion by articulating "clear and convincing reasons that are supported by substantial

7

1  evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (2005) (citing *Lester*, 81 F.3d at 830-31).
2  Likewise, the Ninth Circuit has determined the ALJ may reject an opinion where there are internal
3  inconsistencies within a physician's report. *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595,
4  603 (9th Cir. 1999). Further, an ALJ may reject limitations that are "unsupported by the record as a
5  whole." *Mendoza v. Astrue*, 371 Fed. Appx. 829, 831-32 (9th Cir. 2010) (citing *Batson v. Comm'r of*
6  *the Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2003)). For these reasons, Defendant argues the
7  ALJ properly rejected the opinion of Dr. Debattista. (*See* Doc. 24 at 14-18).

8      1.    Inconsistencies with Dr. Debattista's report identified by the ALJ

9      The ALJ found Dr. Debattista's opinion that Plaintiff was limited in his "ability to relate and
10 interact with coworkers and the public" (Doc. 13-9 at 13) was inconsistent with the observation that
11 Plaintiff "interacted well during that examination." (Doc. 13-3 at 30) Further, the ALJ observed that
12 "Dr. Debattista described the claimant's symptoms as just moderate, which conflicts with the extreme
13 limitations he identifies." (*Id.*)

14     Dr. Debattista did not describe Plaintiff's social impairments as moderate, but rather as
15 "marked." (Doc. 13-9 at 11, 13) Even still, he made this finding despite the fact that Plaintiff "made
16 good eye contact and good interpersonal contact." (*Id.*) However, the ALJ fails to explain how the
17 observation that Plaintiff was able to interact with the physician and was "generally cooperative"
18 during the examination is inconsistent with the conclusion that Plaintiff is unable to be around groups
19 of people or the public, and exhibited "antisocial traits." Notably, Dr. Debattista diagnosed Plaintiff
20 with "Cluster B personality traits."[2] (Doc. 13-9 at 13) Further, Dr. Debattista opined that Plaintiff had
21 "chronic interpersonal difficulties," and "antisocial traits," which appeared to "be his biggest problem."
22 (Doc. 13-9 at 13)

23     Because the ALJ fails to explain how Dr. Debattista's conclusion that Plaintiff has "marked"
24 social interaction limitations is inconsistent with his report, he has failed to provide clear and
25 convincing reasons for affording "little weight" to the limitations assessed by Dr. Debattista. *See*

---

[2] "Cluster B personality traits include antisocial personality disorder, borderline personality disorder, histrionic personality disorder, and narcissistic personality disorder."  Louis v. Astrue, 169 Soc. Sec. Rep. Service 301, 2011 U.S. Dist. LEXIS 89834 at *21 n.11 (E.D. Cal. Aug. 12, 2011).

*Nguyen v. Chater*, 100 F.3d 1462, 1465 (1996) ("where the purported existence of an inconsistency is squarely contradicted by the record, it may not serve as the basis for the rejection of an examining physician's conclusion").

### 2. Inconsistencies with the medical record

When an ALJ believes a physician's opinion is unsupported by the objective medical evidence, the ALJ has a burden to "set[] out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986). The Ninth Circuit explained: "To say that medical opinions are not supported by sufficient objective findings or are contrary to the preponderant conclusions mandated by the objective findings does not achieve the level of specificity our prior cases have required." *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988).

Here, the ALJ noted that Plaintiff "does complain to his social worker of significant anxiety, but that clinician has never indicated that he appears particularly anxious." (Doc. 13-3 at 30) Further, ALJ noted, "none of [Plaintiff's] treatment providers has ever described problems getting along with him." (*Id.*) Again, however, the ALJ fails to explain how Plaintiff's ability to interact with his treatment providers on a one-on-one basis is inconsistent with the determination that Plaintiff would have marked difficulties with interacting with co-workers, crowds, or the public. Thus, the inconsistencies the ALJ purported to identify do not support the decision to give "less weight" to the opinion of Dr. Debattista.

### 3. Plaintiff's subjective statements

The ALJ asserts Dr. Debattista's opinion "appears to be based largely on the claimant's subjective statements concerning his abilities rather than Dr. Debattista's own observations of his functioning" though he fails to explain why he believes this. (Doc. 13-3 at 30) The records indicate Dr. Debattista reviewed Plaintiff's medical records and formulated his opinion after doing so and talking to Plaintiff. While Dr. Debattista *may* have based his opinions on Plaintiff's self-report, it is equally possible he based his opinions upon the content of the medical records, Plaintiff's prison history, his diagnosis of Cluster B personality traits, or other factors. Though the ALJ may reject a physician's opinion when it is predicated upon "a claimant's self-reports that have been properly discounted as not credible" (*Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008)), the ALJ has failed to properly

do so.

**B.     Remand is appropriate in this matter**

The decision whether to remand a matter pursuant to sentence four of 42 U.S.C. § 405(g) or to order immediate payment of benefits is within the discretion of the district court. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). Except in rare instances, when a court reverses an administrative agency determination, the proper course is to remand to the agency for additional investigation or explanation. *Moisa v. Barnhart*, 367 F.3d 882, 886 (9th Cir. 2004) (citing *INS v. Ventura*, 537 U.S. 12, 16 (2002)). Generally, an award of benefits is directed when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996). In addition, an award of benefits is directed where no useful purpose would be served by further administrative proceedings, or where the record is fully developed. *Varney v. Sec'y of Health & Human Serv.*, 859 F.2d 1396, 1399 (9th Cir. 1988).

Applying the *Smolen* factors to this case, the ALJ failed to set forth legally sufficient reasons to reject the limitations assessed by both Dr. Debattista and Dr. Brown. Thus, the ALJ must determine whether Plaintiff is able to interact with co-workers or the public, and should obtain testimony from a vocational expert to determine whether Plaintiff is able to perform work existing in significant numbers with the social limitations. Given the outstanding issues, the matter should be remanded for further consideration.

## CONCLUSION AND ORDER

For the foregoing reasons, the Court concludes the ALJ erred in evaluating the medical evidence and in rejecting the opinion of examining physician, Dr. Debattista, which was supported by the assessment offered by Dr. Brown. Because the ALJ failed to apply the correct legal standards, and the decision should not be upheld by the Court. *See Sanchez*, 812 F.2d at 510. The Court offers no findings on the remaining issues identified by Plaintiff in his opening brief, because remand is appropriate for further proceedings based upon the first issue raised.

Based upon the foregoing, **IT IS HEREBY ORDERED**:

1. The matter is **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this decision; and
2. The Clerk of Court **IS DIRECTED** to enter judgment in favor of Plaintiff Marcus Anthony Lopez and against Defendant, Carolyn W. Colvin, Acting Commissioner of Social Security.

IT IS SO ORDERED.

Dated: **August 19, 2015**           /s/ Jennifer L. Thurston
                                   UNITED STATES MAGISTRATE JUDGE